**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

AUG 28
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| **FORD MOTOR CREDIT COMPANY LLC, formerly FORD MOTOR CREDIT COMPANY,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil No.:** 1:13-cv-1073 |
| **JUSTIN L. LOGSDON, THE JUSTIN L. LOGSDON REVOCABLE TRUST, and PETER G. LOGSDON,** | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff Ford Motor Credit Company LLC ("Ford Credit"), by and through its counsel, McGuire Woods LLP, for its complaint against defendants Justin L. Logsdon, the Justin L. Logsdon Revocable Trust, and Peter G. Logsdon (collectively, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1. Ford Credit brings this action to enforce its rights under Continuing Guaranties entered into by Defendants, wherein they guarantied certain indebtedness owed to Ford Credit by Broadway Motors LLC ("Broadway" or "Dealer"), and to recover damages against Defendants based upon their breach of the Continuing Guaranties.

2. Broadway was a Virginia corporation, with its principal place of business located at 419 East Lee Street, Broadway, Virginia 22815.

3. Broadway was engaged in the business of selling new and used motor vehicles to the general public, but is no longer in business.

4. After Broadway's assets were liquidated, and the proceeds applied to its outstanding indebtedness owed to Ford Credit, a substantial deficiency remained.

5. Defendants have refused to pay that deficiency, as required by their Continuing Guaranties, in spite of Ford Credit's demand that they do so.

6. Ford Credit, therefore, seeks damages resulting from Defendants' breach of the Continuing Guaranties, together with an award of interest, costs, expenses, and attorney's fees, as provided for in the Continuing Guaranties and the underlying agreements between Broadway and Ford Credit.

**PARTIES**

7. Plaintiff Ford Credit is a Delaware limited liability company, with its principal place of business at One American Road, Dearborn, Michigan 48126. On or about April 20, 2007, Ford Motor Credit Company converted from a Delaware corporation to a Delaware limited liability company pursuant to Sections 228 and 266 of the Delaware General Corporation Law. This conversion was effective on May 1, 2007, and pursuant to the relevant statutes, Ford Motor Credit Company LLC is deemed the same entity as Ford Motor Credit Company by operation of law.

8. Defendant Justin L. Logsdon is a citizen of Virginia, residing in Alexandria, Virginia 22314.

9. Defendant Justin L. Logsdon Revocable Trust (the "Trust") is, upon information and belief, a revocable trust for the benefit of Defendant Justin L. Logsdon, established and existing under the laws of Virginia, with Justin L. Logsdon acting as its trustee.

10. Defendant Peter G. Logsdon is a citizen of Virginia, residing in Alexandria, Virginia 22314.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a), as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

12. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims in this action occurred in the District and because Defendants reside in the District.

## THE AGREEMENT BETWEEN BROADWAY AND FORD CREDIT

### A. The Wholesale Financing and Security Agreement

13. On or about July 18, 2006, Broadway executed and delivered to Ford Credit an Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement ("Wholesale Agreement"). A copy of the Wholesale Agreement is attached as Exhibit A, and incorporated by reference.

14. Broadway financed its purchases of new and used motor vehicles with Ford Credit under the terms of the Wholesale Agreement (the "Vehicles").

15. Ford Credit provided financing to Broadway from time to time as Vehicles were ordered from the manufacturer. These amounts were defined under the Wholesale Agreement as "Advances."

16. The Wholesale Agreement required Broadway to pay to Ford Credit the balance of any Advance with respect to any financed Vehicles, at or before the date on which each Vehicle was sold, as well as monthly interest and flat charges. See Exhibit A, ¶ 3.

17. In the event that Broadway failed to make a required payment when due, the Wholesale Agreement provided that interest would accrue upon the unpaid amount "at a rate that is 4 percentage points higher than the current pre-default rate up to the maximum contract rate permitted by the law of the state where Dealer maintains its business. . . ." See Exhibit A, ¶ 2.

18. In the Wholesale Agreement, and in consideration of Ford Credit's agreement to finance Broadway's acquisition of the Vehicles, Broadway also granted Ford Credit a security interest in, among other things, the Vehicles, the proceeds from the sale of such Vehicles, and any rebates or refunds owed to Broadway. See Exhibit A, ¶ 4.

19. The Wholesale Agreement defined default as, among other things, Broadway's failure "to promptly pay any amount now or hereafter owing to Ford Credit as and when same shall become due in payable." See Exhibit A, ¶ 9.

20. Upon default, Ford Credit was entitled to accelerate any or all of any unpaid balance and take immediate possession of all property in which it had a security interest. See id.

**B. The Security Agreement**

21. On or about July 18, 2006, Broadway executed and delivered to Ford Credit a Security Agreement (the "Security Agreement"). A copy of the Security Agreement is attached as Exhibit B, and incorporated by reference.

22. Under the Security Agreement, Broadway granted Ford Credit a security interest in all its equipment, demonstrators and service vehicles, fixtures, furniture, supplies and machinery, other goods of every kind, all motor vehicles, tractors, trailers, service parts and accessories, other inventory of every kind and any accessions thereto, all accounts, instruments, chattel paper, general intangibles, contract rights, documents and supporting obligations thereto (collectively, including the Vehicles financed under the Wholesale Agreement, the "Collateral").

## THE CONTINUING GUARANTIES

### A. The Continuing Guaranty Dated July 18, 2006

23. In order to induce Ford Credit to extend financing to Broadway under the Wholesale Agreement, Defendants Peter G. Logsdon and the Justin L. Logsdon Revocable Trust executed and delivered a Continuing Guaranty to Ford Credit on or about July 18, 2006. A copy of that Continuing Guaranty is attached as Exhibit C, and incorporated by reference.

24. Under their Continuing Guaranty, Defendants Peter G. Logsdon and the Justin L. Logsdon Revocable Trust "unconditionally" guaranteed that "Dealer will fully, promptly, and faithfully perform, pay and discharge all Dealer's present and future obligations" and agreed, without Ford Credit first having to proceed against Dealer, " to pay on demand all sums due and to become due" to Ford Credit from Dealer and "all losses, costs, attorney's fees or expenses" which Ford Credit "may suffer by reason of Dealer's default. . . ." See Exhibit C.

25. Defendants Peter G. Logsdon and the Justin L. Logsdon Revocable Trust also agreed "to be bound by and on demand to pay any deficiency established by a sale of paper or security held with or without notice," "together with a reasonable attorney's fee (15% if permitted by law) if placed with an attorney for collection . . . ." See id.

### B. The Continuing Guaranty Dated March 20, 2008

26. In order to induce Ford Credit to continue to extend financing to Broadway under the Wholesale Agreement, Defendant Justin L. Logsdon executed and delivered a Continuing Guaranty to Ford Credit on or about March 20, 2008. A copy of that Continuing Guaranty is attached as Exhibit D, and incorporated by reference.

27. Under his Continuing Guaranty, Defendant Justin L. Logsdon "unconditionally" guaranteed that "Dealer will fully, promptly, and faithfully perform, pay and discharge all

Dealer's present and future obligations" and agreed, without Ford Credit first having to proceed against Dealer, "to pay on demand all sums due and to become due to you from Dealer and all losses, costs, attorneys' fees or expenses" which Ford Credit "may suffer by reason of Dealer's default. . . ." See Exhibit D.

28. Defendant Justin L. Logsdon also agreed "to be bound by and on demand pay any deficiency established by a sale of paper or security with or without notice," "together with a reasonable attorneys' fee (15% if permitted by law) if placed with an attorney for collection. . . ." See id.

29. Taken together, the Continuing Guaranties dated July 18, 2006 and March 20, 2008 are referred to herein as the "Continuing Guaranties."

30. The Continuing Guaranties were (and are) guaranties of payment and not of collection.

**DEFAULT BY BROADWAY**

31. In 2008, Broadway began suffering financial difficulties, and was unable to meet its contractual obligations under the Wholesale Agreement.

32. In August of 2008, Broadway defaulted on the Wholesale Agreement.

33. After that default, Ford Credit sought to liquidate both the vehicle inventory and the remaining collateral held by Broadway that was subject to Ford Credit's security interest.

34. Although Ford Credit was able to liquidate the vehicle inventory, Broadway refused to allow Ford Credit access to other collateral within the dealership premises – including various items of furniture, equipment, and other collateral that was subject to Ford Credit's security interest.

35. Accordingly, although Ford Credit was able to liquidate the vehicle inventory, it was unable to liquidate the other items of collateral to which it was refused access.

36. After the application of the proceeds received from the liquidation of the vehicle inventory to the indebtedness owed to Ford Credit under the Wholesale Agreement, a substantial deficiency remained.

37. The amount now owed to Ford Credit includes $203,758.45 for Vehicles that were acquired by Broadway with financing provided under the Wholesale Agreement, but never repaid (the "SOT" or "Sold Out of Trust" amount), plus accrued interest of $102,180.68 on the SOT amount.

38. As of August 1, 2013, the total amount due to Ford Credit was $305,939.13, including the accrued interest on the SOT amount up to that date.

39. Interest continues to accrue on the SOT amount at the rate of 13.0% from August 1, 2013, continuing until entry of Judgment.

**FIRST CLAIM**
**(Breach of Guaranties)**

40. Ford Credit incorporates by reference paragraphs 1 through 39 above, as though fully set forth herein.

41. Broadway defaulted on its obligations to Ford Credit under the Wholesale Agreement as set forth above.

42. Broadway's indebtedness to Ford Credit under the Wholesale Agreement is now due and payable in full.

43. Broadway's indebtedness to Ford Credit under the Wholesale Agreement is an obligation of Defendants under the Continuing Guaranties.

44. After sale of the vehicle inventory held by Broadway, and the application of the proceeds of that sale to Broadway's indebtedness to Ford Credit, a substantial deficiency remained.

45. That deficiency is an obligation of Defendants under the Continuing Guaranties.

46. Ford Credit has made written demands on Defendants to pay the balance of the indebtedness owed by Broadway, and to thereby satisfy the deficiency, but Defendants have failed and refused to pay the amounts owed. Copies of those demand letters are attached as Exhibit E, and incorporated by reference.

47. By failing and refusing to pay such amounts, Defendants breached the Continuing Guaranties.

48. Accordingly, as of August 1, 2013, Defendants owe Ford Credit $305,939.13, plus interest on the SOT amount from August 1, 2013 to the date of entry of Judgment at the rate of 13.0% (a per diem of $72.57).

49. In addition, Ford Credit is entitled to recover its costs, expenses, and attorney's fees incurred as a result of Broadway's default and/or in connection with Ford Credit's enforcement of the Continuing Guaranties.

**REQUEST FOR RELIEF**

Plaintiff respectfully requests that this Court:

A. On the First Claim, awarding Ford Credit judgment against Defendants for $305,939.13, plus interest on the SOT amount from August 1, 2013 to the entry of judgment at the rate of 13.0% (a per diem of $72.57), as well as Ford Credit's costs, expenses, and attorney's fees incurred as a result of Broadway's default and/or in connection with Ford Credit's enforcement of the Continuing Guaranties; and

B. Grant such other or further relief as the Court may deem just and proper in the circumstances.

Respectfully Submitted

FORD MOTOR CREDIT COMPANY LLC
formerly FORD MOTOR CREDIT COMPANY

By Counsel

Candace A. Blydenburgh (VSB No. 40231)
McGUIREWOODS LLP
901 East Cary Street
One James Center
Richmond, Virginia 23219
Telephone: 804.775.4772
Facsimile: 804.698.2034
cblydenburgh@mcguirewoods.com